IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CORCEPT THERAPEUTICS INCORPORATED,
a Delaware Corporation,

Plaintiff,

v.

DOHMEN LIFE SCIENCE SERVICES, LLC,
a Wisconsin Limited Liability Company,

Defendant.

Case No. 17-cv-1332-UNA

**PUBLIC VERSION**

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STAY OR DISMISS IN PART**

---

**RICHARDS, LAYTON & FINGER, P.A.**

Gregory V. Varallo (#2242)
Susan M. Hannigan (#5342)
Brian F. Morris (#6235)
920 N. King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Defendant Dohmen Life Sciences
Services, LLC*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................2

SUMMARY OF ARGUMENT ...............................................................................2

STATEMENT OF FACTS ......................................................................................3

I.     CORCEPT AND DLSS ENTER THE AGREEMENT...................................3

II.    CORCEPT'S TERMINATION OF THE AGREEMENT................................4

III.   THE PARTIES' PARALLEL CASES SPRING FROM THEIR DISPUTE OVER
       THE AGREEMENT ......................................................................................5

ARGUMENT .......................................................................................................7

I.     THE COURT SHOULD STAY THIS CASE IN FAVOR OF THE
       PREVIOUSLY FILED CASE ALREADY PROCEEDING IN THE
       DELAWARE CHANCERY COURT................................................................7

       A.    Corcept's Legal Claims Are Dependent On Its Declaratory Claim........................9

       B.    The Court Should Exercise Its Discretion And Stay This Case In Favor Of
             The Parallel Chancery Court Proceedings ..............................................10

             1.    The Chancery Court Case is parallel to this case and any claims
                   asserts here can be addressed in Chancery Court .......................10

             2.    Weighing of the relevant factors tips the scale in favor of staying
                   this case ..............................................................................11

II.    IF THE COURT DOES NOT STAY THIS CASE, IT SHOULD DISMISS
       CORCEPT'S FOURTH AND FIFTH CAUSES OF ACTION FOR FAILURE TO
       STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED .................13

       A.    Rule 12(b)(6) Standard .........................................................................13

       B.    Corcept's Fraudulent Inducement And Negligent Misrepresentation
             Claims Fail As A Matter Of Law Under Missouri's Economic Loss
             Doctrine..............................................................................................14

CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................................13

*Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc.,*
    332 S.W.3d 184 (Mo. Ct. App. 2010)....................................................................14

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007).................................................................................................13

*Dohmen Life Sciences Services, LLC v. Corcept Therapeutics
    Incorporated,*
    C.A. No. 2017-0567-tmr. (Br. Ex. 1.)......................................................................5

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)..............................................................................13, 14

*Getty Refining & Mktg. Co. v. Park Oil, Inc.,*
    385 A.2d 147 (Del. Ch. 1978).................................................................................11

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997)..................................................................................14

*Rarick v. Federated Serv. Ins. Co.,*
    852 F.3d 223 (3d Cir. 2017)......................................................................................8

*Reifer v. Westport Ins. Corp.,*
    751 F.3d 129 (3d Cir. 2014)...........................................................................7, 8, 10

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.,*
    322 S.W.3d 112 (Mo. 2010) ...................................................................................15

*Sumner v. Tompkins Ins. Agencies, Inc,*
    No. 16-2218, 2016 WL 3345453 (E.D. Pa. June 15, 2016)...............................10, 11

*Wilmington Trust Co. v. Barry,*
    397 A.2d 135 (Del. Super. Ct. 1979) ......................................................................11

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995 .......................................................................................1, 7, 11

STATUTES

Declaratory Judgment Act (DJA) 29 U.S.C. § 2201.................................................6, 8, 10

**OTHER AUTHORITIES**

Delaware Court of Chancery Rule 13 ...........................................................................10, 11

Federal Rule of Civil Procedure 12(b)(6) ........................................................................13

## INTRODUCTION

This case is related to a case first filed by Defendant Dohmen Life Sciences Services, LLC ("DLSS") in the Court of Chancery for the State of Delaware on August 7, 2017 against Plaintiff Corcept Therapeutics Incorporated ("Corcept") for its improper termination of the parties' Pharmaceutical Manufacturer Service Agreement (the "Agreement").   (Br. Ex. 1.)[1] Rather than bring its claims in Chancery Court, Corcept took the unusual step of filing a second, separate lawsuit in the Superior Court of the State of Delaware, New Castle County, which is the Complaint now before this Court.   Corcept did this despite the fact that its claims all related to the same Agreement at issue in the first filed case in Chancery Court and could have been brought as counterclaims in that court.   (*See* D.I. 2, Ex.1.)   Indeed, Corcept's seven causes of action all stem from its first cause of action seeking a declaration that (1) DLSS breached the substantive services provisions of the Agreement; (2) Corcept did not breach the Agreement by terminating it before the term was up; and (3) DLSS breached the post-termination provisions of the Agreement. (*See* D.I. 2, Ex.1, ¶72.)   In other words, if the Court does not find for Corcept on its declaratory judgment claim, then all its other claims fail.   Because Corcept's claims should be litigated before the Chancery Court, this Court should stay this case until after the case in Chancery Court is resolved.   *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("'[O]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942))).

---

[1] Citations to "Br. Ex." refer to the exhibits accompanying this brief.   Specifically, Ex. 1 is the original complaint filed in the Chancery Court and Ex. 2 is the amended complaint, including all exhibits, filed in the Chancery Court.

If the Court decides to proceed with this case despite the parallel proceeding in Chancery Court, then it should dismiss Corcept's claims for fraudulent and negligent misrepresentation as those claims are barred by Missouri's economic loss doctrine. Accordingly, if the Court were to choose not to stay this case, it should nevertheless dismiss Corcept's fourth and fifth causes of action for failure to state claims upon which relief can be granted.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

In this case, Corcept seeks declaratory and legal relief based on alleged breaches of the Agreement by DLSS. The case was initially filed in the Delaware Superior Court and properly removed to this Court by DLSS. This motion is DLSS's initial response to Corcept's Complaint.

## SUMMARY OF ARGUMENT

1. This Court should stay this case in favor of the parallel case proceeding in the Delaware Chancery Court under the Court's discretionary power to stay actions seeking both declaratory and monetary relief because the legal claims Corcept asserts are dependent on its declaratory claim and the declarations are best pursued in the previously filed case pending in Chancery Court.

2. If the Court decides not to exercise its discretion to stay this case, it should dismiss Corcept's claims for fraudulent inducement and negligent misrepresentation because those claims are barred by Missouri's economic loss doctrine and thus, Corcept has failed to state claims for fraudulent inducement and negligent misrepresentation upon which relief can be granted.

## STATEMENT OF FACTS

### I.    CORCEPT AND DLSS ENTER THE AGREEMENT

DLSS provides patient services, financial services, channel support services, regulatory compliance services, and technology services to orphan drug, biopharma, biologic and medical device companies. (Br. Ex. 2, ¶30.)   DLSS has been a family-owned company for the last 159 years and has grown to become a recognized leader in providing business process outsourcing services to over 400 pharmaceutical and medical device companies ranging in size from Fortune 50 companies to early start-up companies.  (*Id.*, ¶29.)

Corcept is a publicly-traded corporation that manufactures and markets a single FDA-approved pharmaceutical drug called Korlym. (D.I. 2, Ex. 1, ¶12.)  The FDA approved Korlym for use by patients with endogenous Cushing's Syndrome, a rare disease that affects 1.2 to 1.7 people per million.  (Br. Ex. 2, ¶33.)  Korlym, which was approved in 2012, was the first medication approved to treat Cushing's Syndrome. (D.I. 2, Ex. 1, ¶12.)  To distribute Korlym, Corcept is required to partner with an exclusive specialty pharmacy, such as DLSS.  (*Id.*, ¶13.) In 2012, Corcept partnered with a different specialty pharmacy using a traditional retail model, but the service was inadequate and so Corcept began looking for a new partner.  (*Id.*, ¶¶14-15.)

On May 21, 2013, Corcept contracted with Centric Health Resources, Inc., a former DLSS affiliate which was subsequently merged with and into DLSS, to be the exclusive provider of a suite of services related to Korlym distribution by entering into the Pharmaceutical Manufacturer Service Agreement (the "Agreement").  (Br. Ex. 2, ¶37.)  Under the Agreement, DLSS provided specialty pharmacy services; patient intake, access and reimbursement services; patient support services; claims management and collections services; and finance and inventory

reporting services on behalf of and for the benefit of Corcept as described in the exhibits to the Agreement. (*Id.*, ¶38.)

## II.   CORCEPT'S TERMINATION OF THE AGREEMENT

The Agreement provides for an initial term of three years and automatic renewal for additional three-year terms, unless either party gives written notice of non-renewal at least 180 days before the expiration of the current term. (D.I. 2, Ex. 1, ¶31; Br. Ex. 2, ¶44.) Corcept renewed the Agreement effective June 24, 2016. (D.I. 2, Ex. 1, ¶34; Br. Ex. 2, ¶45.) Thus, the current term of the Agreement was set to expire on June 24, 2019. (Br. Ex. 2, ¶46.)

Sometime between June 24, 2016 and early March of 2017, Corcept began covertly negotiating with a newly formed competitor to DLSS named Optime Care, Inc. ("Optime") for specialty pharmacy services. (Br. Ex. 2, ¶67.) Corcept secretly used DLSS's propriety systems and Standard Operating Procedures as a template to assist Optime in designing Optime's own systems and shared with Optime DLSS's "intellectual property," "work product," "systems," and "data" described in Section 7.1 of the Agreement. (*Id.*, ¶¶70-71.)

Once Corcept became comfortable that Optime was ready to serve as Corcept's exclusive service provider, Corcept contrived a way to terminate the Agreement. (Br. Ex. 2, ¶80.) On June 29, 2017, Corcept sent DLSS a Notice of Breach of the Agreement. (D.I. 2, Ex. 1, ¶39; Br. Ex. 2, ¶82.) DLSS promptly responded to the Notice of Breach, by letter dated July 3, 2017 from the CEO of DLSS's parent corporation. (D.I. 2, Ex. 1, ¶40; Br. Ex. 2, ¶123.) On July 12, 2017 the CEO of DLSS's parent corporation and the President of DLSS, met with Charlie Robb, Corcept's CFO, and Sean Maduck, Corcept's Senior-Vice President in San Francisco (the "July 12 Meeting"). (D.I. 2, Ex. 1, ¶41; Br. Ex. 2, ¶124.) DLSS went into the meeting willing and eager to meet any reasonable new expectations that Corcept had, but Corcept was unable to

identify how DLSS could "cure" any supposed breaches.   (Br. Ex. 2, ¶¶126, 129-130.) Unsurprisingly, Corcept viewed the July 12 Meeting differently and believes that DLSS refused to take any "fundamental steps to improve its performance" under the Agreement.  (D.I. 2, Ex. 1, ¶41.)

Regardless of what actually happened at the July 12 Meeting, the dispute between the parties was not resolved, and on August 4, 2017, Corcept sent a letter to DLSS terminating the Agreement.  (D.I. 2, Ex. 1, ¶44; Br. Ex. 2, ¶135.)  Corcept immediately followed the termination letter with a letter regarding "transitional services," including requests that DLSS work with Optime to ensure patient continuity.  (D.I. 2, Ex. 1, ¶44; Br. Ex. 2, ¶135.)  DLSS responded to both letters and cooperated with Corcept and Optime to ensure patient continuity.  (D.I. 2, Ex. 1, ¶48; Br. Ex. 2, ¶¶137-138.)  Additionally, Corcept's unilateral and improper termination resulted in DLSS coming into possession of approximately $12.5 million as result of sales of Korlym post-termination.  (D.I. 2, Ex. 1, ¶¶54-56; Br. Ex. 2, ¶141.)  Instead of exercising self-help remedies regarding those funds, DLSS has placed the funds into an escrow account with U.S. Bank National Association that can be released based on an agreement between DLSS and Corcept or by an order from the Delaware Chancery Court.  (Br. Ex. 2, ¶¶143-144.)

## III.   THE PARTIES' PARALLEL CASES SPRING FROM THEIR DISPUTE OVER THE AGREEMENT

In light of Corcept's improper termination of the Agreement, on August 7, 2017, DLSS initiated a lawsuit in the Delaware Chancery Court against Corcept, *Dohmen Life Sciences Services, LLC v.* Corcept *Therapeutics Incorporated*, C.A. No. 2017-0567-TMR. (Br. Ex. 1.)  In its initial complaint, DLSS asserted that Corcept breached the Agreement by improperly terminating.  (Br. Ex. 1.)  Instead of asserting its related claims as counterclaims in Chancery

Court, on August 29, 2017, Corcept initiated this case by filing a separate lawsuit in Delaware Superior Court, and also sought to dismiss DLSS's case in the Chancery Court. (D.I. 2, Ex. 1.)

DLSS has since amended its complaint with the Delaware Chancery Court, mooting Corcept's motion to dismiss. (Br. Ex. 2.) In its amended complaint, DLSS is seeking an injunction to stop Corcept from using confidential information that is owned by DLSS and declarations that DLSS is entitled to the escrow funds under the doctrines of equitable offset and/or recoupment in light of Corcept's numerous breaches of the Agreement. (*See* Br. Ex. 2, ¶¶146-168.) Additionally, DLSS is asserting that it is entitled to specific performance or damages resulting from Corcept's breaches as well as damages stemming from Corcept's misappropriation of DLSS's trade secrets. (*See id.*, ¶¶169-190.)

Corcept asserts similar claims against DLSS here, alleging that it is entitled to declarations that DLSS breached the Agreement pre- and post-termination and that Corcept's termination of the Agreement was not a breach and damages resulting from the alleged breaches of the Agreement as well as breaches of the duty of good faith and fair dealing. (*See* D.I. 2, Ex. 1, ¶¶58-86.) Additionally, Corcept has asserted other claims stemming from allegations regarding DLSS's actions in performing the Agreement or failure to perform certain actions under the Agreement, including claims for fraudulent inducement and negligent misrepresentation as well as conversion and money had and received. (*See id.*, ¶¶87-108.) Indeed, as Corcept alleges, DLSS's obligations arise from the terms of the Agreement and Corcept's alleged damages stem from alleged breaches of the Agreement. (*See, e.g.*, D.I. 2, Ex. 1, ¶91 ("post-renewal breaches of the MSA"); ¶98 ("post-renewal breaches of the MSA"); ¶100 ("Pursuant to the terms of the MSA"); and ¶105 ("Pursuant to the terms of the MSA").)

## ARGUMENT

I.   **THE COURT SHOULD STAY THIS CASE IN FAVOR OF THE PREVIOUSLY FILED CASE ALREADY PROCEEDING IN THE DELAWARE CHANCERY COURT.**

Under the federal Declaratory Judgment Act ("DJA"), "any court of the United States . . . may declare the rights and other legal relations of any interested party." 29 U.S.C. § 2201. Federal courts have discretionary power to stay declaratory judgment actions in favor of parallel state litigation. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Indeed, the DJA "'place[s] a remedial arrow in the district court's quiver' and confers a 'unique and substantial discretion' on federal courts to determine whether to declare litigants' rights." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton*, 515 U.S. at 286, 288). This discretionary power associated with declaratory judgments stems from the fact that "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.

While a district court will consider various factors in determining whether to exercise its discretion and stay a declaratory judgment action, those factors all stem from one core consideration, whether "'another proceeding was pending in a state court in which all matters in controversy between the parties could be fully adjudicated.'" *Reifer*, 751 F.3d at 139 (quoting *Brillhart*, 316 U.S. at 495). With that core consideration in mind, federal courts in the Third Circuit consider the following seven factors[2] in deciding whether to exercise their discretion to stay:

(1)   the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2)   the convenience of the parties;

---

[2] There is an eighth factor to consider in the insurance context, which is not relevant here. *Reifer*, 751 F.3d at 146.

(3)     the public interest in settlement of the uncertainty of obligation;

(4)     the availability and relative convenience of other remedies;

(5)     a general policy of restraint when the same issues are pending in a state court;

(6)     avoidance of duplicative litigation; and

(7)     prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata.

*Id.* at 146. The factors are non-exhaustive and courts should address other considerations when necessary. *Id.*

Where a lawsuit seeks both declaratory and coercive or legal relief, like the case at hand, the Third Circuit applies what is referred to as the independent claim test. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017). Under the "independent claim" test, when the lawsuit contains a mix of declaratory and legal claims, before deciding whether to exercise its discretionary power under the DJA to stay the case, a district court must decide whether the legal claims are independent of the declaratory claims. *Id.* And if the legal claims are dependent on the declaratory claim, then the court retains discretion to be able to stay the case. *See id.* (citing *Reifer*, 751 F.3d at 144-46).

Here, because Corcept's legal claims, such as its breach of contract claim, fraudulent inducement and conversion claim, are dependent on its declaratory judgment claim, the Court can determine whether to stay the case under the discretion provided by the DJA. When weighing the factors in considering whether to exercise discretion under the DJA, the Court should stay this lawsuit in favor of the parallel proceedings occurring in Delaware Chancery Court.

## A.     Corcept's Legal Claims Are Dependent On Its Declaratory Claim.

Corcept's Complaint is an action for both a declaratory judgment and monetary relief. (D.I. 2, Ex.1, ¶1.)  Its first cause of action is for a declaratory judgment.  (*See* D.I. 2, Ex.1, ¶¶58-72.)  And more than half of Corcept's requested relief seek declarations from the Court.  (*See* D.I. 2, Ex.1 at 29.)  More specifically, Corcept requests the following declarations:

- that DLSS breached the Agreement's service provisions;

- that Corcept's June 29, 2017 letter to DLSS terminated the Agreement for cause;

- that DLSS breached its post-termination obligations under the Agreement or its implied covenant of good faith and fair dealing;

- that DLSS is withholding assets to which Corcept is entitled and such action is an unlawful breach of the Agreement;

- that Corcept has a right to immediate possession of assets in DLSS's possession;

- that DLSS breached its pre-termination services obligations to Corcept under the terms of the Agreement or the implied covenant of good faith and fair dealing; and

- that DLSS fraudulently or negligently induced Corcept into assenting to the renewal of the Agreement for a second three-year term.

*Id.*

The outcome of Corcept's remaining claims is dependent on the outcome of Corcept's declaratory judgment claim.  For example, if DLSS is not declared to have been in breach of the Agreement's service provisions, then all of Corcept's other claims necessarily fail.  If DLSS is not found to have breached the Agreement's service provision, then Corcept's termination would be a material breach of the Agreement and there could not have been a fraudulent inducement or

misrepresentation, since DLSS's actions were proper under the Agreement.  Additionally, as the party in material breach of the Agreement, Corcept could not enforce its contractual rights.

Also, if Corcept is not declared to have terminated the Agreement properly, then all of Corcept's other claims fail.  In other words, if Corcept is not found to have complied with its duties under the Agreement, then it would have no rights to enforce against DLSS because Corcept's termination would have been a material breach of the Agreement leaving it without rights to enforce.  Conversely, if Corcept's demand for a declaration that DLSS materially breached the service provisions of the Agreement is granted, then it will find success on its other claims. Thus, Corcept's breach of contract claim is contingent on its claim for declaratory relief.

The fact that additional recovery in the form of damages could possibly flow to Corcept as a result of a declaration in its favor does not change the fact that the legal claims hinge on the declarations sought, making those claims dependent on the declaratory claim.  *See generally Reifer*, 751 F.3d at 136 ("simply because additional recovery would likely flow to Reifer as a result of a declaration in her favor does not preclude applicability of the DJA").  Simply put, Corcept's request for a declaration that DLSS breached the service provisions of the Agreement is the foundation of its lawsuit.  Accordingly, the Court should stay this mixed case for declaratory and legal relief. *See Sumner v. Tompkins Ins. Agencies, Inc*, No. 16-2218, 2016 WL 3345453, at *8 (E.D. Pa. June 15, 2016) (finding the legal or coercive claims dependent on the declarations sought).

**B.     The Court Should Exercise Its Discretion And Stay This Case In Favor Of The Parallel Chancery Court Proceedings.**

1.     <u>The Chancery Court Case is parallel to this case and any claims asserted here can be addressed in Chancery Court.</u>

There can be no question that the case proceeding in the Delaware Chancery Court is parallel to this case.  Both cases focus on the parties' Agreement.  More specifically, both cases

turn on whether Corcept or DLSS materially breached the Agreement.  (Compare D.I. 2 with Br. Ex. 2.)  Both parties' claims arise out of the same transaction or occurrence.  To be sure, the separate cases are merely two sides of the same coin.

Nonetheless, instead of bringing its claims as counterclaims in the Chancery Court case, Corcept chose to file an entirely separate action. *See* Del. Ct. Ch. R. 13 ("A pleading shall state as a counterclaim any claim, which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim[.]").  Indeed, once the parties' dispute was before the Chancery Court, which is a court of equity, the Chancery Court would hear all claims, including Corcept's claims seeking a purely legal remedy.  *See Getty Refining & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 150 (Del. Ch. 1978) ("[O]nce jurisdiction is properly obtained by Chancery, it will go on to decide the whole controversy, even though to do so involves the giving of a purely legal remedy." (internal quote omitted)); *see also Wilmington Trust Co. v. Barry*, 397 A.2d 135, 138 (Del. Super. Ct. 1979) ("It is settled law in Delaware that when equity obtains jurisdiction over some portion of a controversy, it will go on to decide the whole controversy and give complete and final relief.").  Accordingly, this Court has the discretionary power to stay this action in favor of the parallel state Chancery Court litigation.  *See Wilton*, 515 U.S. at 288.  When considering the factors relevant to whether to exercise its discretionary power to stay, those factors weigh in favor of this Court staying this case.

        2.     <u>Weighing of the relevant factors tips the scale in favor of staying this case</u>.

As explained above, the scope of the pending Chancery Court action fully encompasses, or is capable of encompassing, all claims in this case because Corcept has yet to file an answer but when it does, it could assert its claims here as counterclaims in the Chancery Court. *See* Del.

Ct. Ch. R. 13. Additionally, because the parties have asserted only state law claims, the defenses would be the same whether in federal court or state court. And all of Corcept's claims can be satisfactorily adjudicated in state court because the Chancery Court has the ability to decide the whole controversy, even issues involving purely legal remedies. *See Getty Refining & Mktg. Co.*, 385 A.2d at 150. All these factors tip in favor of this Court exercising its discretion and staying this case. *See Sumner*, 2016 WL 3345453, at *8-10.

While it is likely that a declaration from this Court would resolve the uncertainty of the obligation that gave rise to the parties' controversy—i.e, which party materially breached the Agreement—so too could a declaration from the Chancery Court. Thus, this factor is neutral at best. The convenience of the parties is undoubtedly served by resolving all issues regarding the Agreement in a single forum and a single lawsuit and therefore, it weighs in favor of a stay. Because there is no particular public interest in settlement of the uncertainty of the parties obligation under the Agreement, that factor is also neutral.

The most convenient—and available—remedy is for Corcept to bring its claims asserted here as counterclaims in the Chancery Court matter. Such a remedy is much more convenient than having the parties raise and brief the same issues regarding the Agreement in two separate courts. Accordingly, this factor weighs heavily in favor of staying this case.

Next, the general policy of restraint when the same issues are pending in a state court should be enforced by the Court here. This case will address the exact same issues regarding the Agreement currently pending or soon to be pending in the Chancery Court—once Corcept files an answer and counterclaims in response to the amended complaint. Because the same issues are pending in both forums, this Court should stay this case. Obviously, if this case proceeds, there

will be duplicative discovery and motion practice with the Chancery Court case. Accordingly, both factors weigh in favor of the stay.

Finally, it appears Corcept used the claims here as a method of "procedural fencing." As explained above, Corcept could have, and should have, asserted its claims in this case as counterclaims in the Chancery Court case as those claims stem from the same transaction and occurrence, i.e., the enforcement of the Agreement. By filing its own lawsuit, Corcept procedurally attempted to take over control of the lawsuit as a plaintiff. Such procedural fencing should be discouraged and thus, this factor weighs in favor of a stay.

In the end, when considering the relevant factors, they either are neutral or weigh in favor of the Court exercising its discretion and staying this case. Accordingly, the Court should use the "remedial arrow" it has been given and stay this mixed declaratory and legal action in favor of the parallel Delaware Chancery Court litigation.

## II.     IF THE COURT DOES NOT STAY THIS CASE, IT SHOULD DISMISS CORCEPT'S FOURTH AND FIFTH CAUSES OF ACTION FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

### A.     Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at

556. While a complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

Additionally, although a court should accept well-pled and plausible factual allegations, it may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949). Indeed, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997). So in deciding a motion to dismiss under the *Twombly/Iqbal* standard, a court must first separate factual and legal elements and second determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11 (quoting *Iqbal*, 129 S. Ct. at 1950).

> **B.    Corcept's Fraudulent Inducement And Negligent Misrepresentation Claims Fail As A Matter Of Law Under Missouri's Economic Loss Doctrine.[3]**

"In Missouri, the economic loss doctrine has been observed to prohibit a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). Indeed, under Missouri common law, "recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Id.* Here, Corcept's claims for fraudulent inducement and negligent misrepresentation are attempts by Corcept to recover in tort for economic losses that are contractual in nature. Thus, the claims are barred by the economic loss doctrine as they do not involve personal injury nor damage to property.

---

[3] According to its terms, the Agreement and "all rights and obligations" under the Agreement are governed by Missouri law. (*See* D.I. 2, Ex. 1.) All Corcept's claims, including its claims for fraudulent inducement and negligent misrepresentation, stem from rights and obligation under the Agreement. (*See* D.I. 2, ¶¶ 88, 98.)

The only misrepresentation alleged by Corcept is that DLSS represented to Corcept that it intended to introduce a new information management system but it never introduced that system. (*See* D.I. 2, Ex. 1, ¶¶32-36, 88, 93.)   However, as Corcept has alleged, any damage it has allegedly suffered from the misrepresentation are expenses or pecuniary loss resulting from "post-renewal breaches of the Agreement" or paying for services "that were not in compliance with the Agreement."   (*Id.* ¶¶ 88, 93.)   Thus, if DLSS's services are sufficient under the Agreement, then Corcept's fraudulent inducement or negligent misrepresentation claims will fail. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 132, 134 (Mo. 2010) (noting that claims for fraudulent or negligent misrepresentation requires proof of pecuniary injury consequently and proximately caused by the misrepresentation).   Accordingly, Corcept is seeking to recover in tort, i.e., fraudulent inducement or negligent misrepresentation, for economic losses that are contractual in nature, i.e., pecuniary loss based on post-renewal breaches of the Agreement. (*See* D.I. 2, Ex.1, ¶¶ 33, 88, 93.)

Corcept has failed to state a claim for either fraudulent inducement or negligent misrepresentation because both claims, as alleged, are barred by Missouri's economic loss doctrine.   Therefore, Corcept's fourth and fifth causes of action must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

DLSS requests that the Court stay this case until resolution of the previously-filed and directly-related Chancery Court Action.   If the Court decides not to grant DLSS's request to stay this case, the Court should grant DLSS's request to dismiss Corcept's fourth and fifth causes of action for fraudulent inducement and negligent misrepresentation for failure to state claims upon which relief can be granted.

Dated this 27th day of September, 2017.

/s/  *Susan M. Hannigan*
Gregory V. Varallo (#2242)
Susan M. Hannigan (#5342)
Brian F. Morris (#6235)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Defendant Dohmen Life Sciences
Services, LLC*